FILED

2013 Sep-11  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLOTTE KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  5:11-CV-4277-VEH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION[1]

Plaintiff Charlotte King ("Ms. King") brings this action pursuant to 42 U.S.C.

§ 1382c(3)(A), § 1614(a)(3)(A) of the Social Security Act (the "Act").  She seeks

review of a final adverse decision of the Commissioner of the Social Security

Administration (hereinafter "Commissioner" or "Secretary"), who denied her

---

[1]  The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

application for Supplemental Security Income ("SSI").[2]  Ms. King has timely pursued and exhausted her administrative remedies available before the Commissioner.  Thus, the case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. King protectively applied for SSI on May 5, 2009.  (Tr. 13, 74).  In her application, Ms. King maintained that she has been disabled since March 21, 1997, based upon a primary diagnosis of lumber degenerative disc disease and a secondary diagnosis of diabetes with peripheral neuropathy. (Tr. 74). The SSI claim was denied initially on July 27, 2009.  (Tr. 13, 74).

Ms. King timely made a request for a hearing before an Administrative Law Judge ("ALJ") that was received by the Social Security Administration on August 10, 2009.  (Tr. 90-92).  Ms. King was a 48-year-old female at the time of her hearing, which took place on April 25, 2011.  (Tr. 24, 29).

During the hearing, the ALJ confirmed that Ms. King had amended her disability onset date to coincide with the date of her SSI application.  (Tr. 28).

---

[2]   In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Act.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Testimony elicited during the hearing substantiated Ms. King's prior relevant work experience as a cutter, but revealed no other gainfully employed positions. (Tr. 53). Subsequent to the hearing, the ALJ concluded Ms. King was not disabled as defined by the Act and denied her SSI application on June 10, 2011. (Tr. 13-20).

Ms. King filed a request for review of the ALJ's decision on August 9, 2011. (Tr. 5). On October 20, 2011, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Ms. King. (Tr. 1).

On December 20, 2011, Ms. King filed her complaint with this court asking for review of the ALJ's decision. (Doc. 1). On June 20, 2012, Ms. King filed a brief (Doc. 9) in support of her appeal, and on July 20, 2012, the Commissioner followed with her responsive brief. (Doc. 10). Ms. King chose not to file a reply brief. This court has carefully considered the record, and for the reasons stated below, affirms the Commissioner's denial of benefits.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, current through July 11, 2013.

inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

5

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. King has not engaged in substantial gainful activity since the date of her SSI application, *i.e.*, May 5, 2009. (Tr. 15 ¶ 1). Thus, the claimant met step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ decided that "[t]he claimant has the following severe impairments: degenerative disk disease and arthritis." (Tr. 15 ¶ 2 (citations omitted)).[5] Accordingly, the ALJ concluded that Ms. King satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. King does not have an impairment or a group of impairments that meets or medically equals one of the listed

---

[5] The ALJ also discussed Ms. King's alleged impairments of hypertension, diabetes, nerve pain, vertigo, asthma, high cholesterol, acid reflux, and allergies, but found either no confirmation of the existence of such a medically determinable impairment or "no indication in the medical evidence of record that these impairments pose any significant limitations, either singularly or in combination, in the claimant's ability to perform work related activities." (Tr. 16). The ALJ further addressed Ms. King's diagnosis of obesity consistent with SSR 02-01p. (Tr. 16).

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17 ¶ 3).  Ms. King

does not challenge this determination on appeal.

The ALJ then evaluated Ms. King's residual functional capacity ("RFC") at

step four, and found:

> [T]he claimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) except the claimant can occasionally
> lift/carry 20 and 10 pounds frequently.  She can occasionally climb,
> balance, stoop, kneel, crouch, and crawl.  The claimant can occasionally
> climb ramps and stairs but never climb ladders, ropes, and scaffolds.
> She should avoid concentrated exposure to cold, heat, and vibrations.
> She should avoid all exposure to unprotected heights and dangerous
> machinery.

(Tr. 18 ¶ 4).[6]  Further, relying upon testimony from a vocational expert, the ALJ

found that Ms. King is capable of performing her past relevant worker as a cutter.

(Tr. 20 ¶ 5).  Additional jobs falling within Ms. King's RFC include positions as a

wire worker, bench assembler, and inspector.  (Tr. 20).

---

[6]  The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the
weight lifted may be very little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls.  To be considered capable of performing
a full or wide range of light work, you must have the ability to do substantially all of
these activities.  If someone can do light work, we determine that he or she can also
do sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through September 5, 2013).

Accordingly, the ALJ concluded Ms. King "has not been under a disability, as defined by the Social Security Act, since May 5, 2009, . . . ." (Tr.  20 ¶ 6), and denied her SSI claim.  (Tr. 20).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986))).  In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d

1103, 1106 (5th Cir. 1980)).[7]

In this appeal, Ms. King raises only one issue: "Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard." (Doc. 9 at 5). As Ms. King more specifically asserts:

> In light of the longitudinal medical history documenting the Plaintiff's complaints of and treatment for her symptoms, the ALJ's conclusions are irrational and wholly inconsistent with the record and are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of *Hale*.

(Doc. 9 at 8).

## I.   THE ALJ EVALUATED THE CREDIBILITY OF MS. KING'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN UNDER THE APPROPRIATE LEGAL STANDARD, AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.[8]

In order to satisfy the Eleventh Circuit pain standard, Ms. King must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be

---

[7]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[8]   The following framework, analysis, and disposition persuasively flow from the undersigned's decision affirming the Commissioner in *Brewer v. Astrue*, No. 5:10-CV-0341-VEH, (Docs. 13, 14) (N.D. Ala. Dec. 7, 2010).

expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Further, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

In this case, the ALJ determined that Ms. King had not met her pain standard burden. More specifically, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment. The claimant['s] allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be only partially credible.

(Tr. 19).

In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th

Cir. 2002).  As the Eleventh Circuit discussed the ALJ's adequate credibility findings

in *Wilson*:

> Moreover, the ALJ specifically enunciated the following findings:
>
> On or before December 31, 1987, [the date last insured,] there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. <u>Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was precluded from working.</u>
>
> Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain.  The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular enlargement. <u>It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured. Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to within one year of his application date.</u>

*Id.*, 284 F.3d at 1226 (emphasis added).

Akin to the standard set forth in *Wilson*, the ALJ's reasoning behind his partial

negative credibility finding in this instance is expressly explained in his decision and

supported by substantial evidence contained in the record.  *See Tieniber v. Heckler*,

720 F.2d 1251, 1255 (11th Cir. 1983) ("Thus, where proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.").

For example, the ALJ observed the following inconsistencies in Ms. King's subjective allegations of disabling pain:

> She [testified that she] has pain because of her diabetes <u>but the most troubling pain is because of her arthritis in her joints</u>. <u>She has daily pain that she rates as a 7 with pain medication and an 8 without</u>. She states that Neurotic really did not help. <u>She is able to text but it hurts her hands</u>. She does not shop for groceries. If she cooks a big meal, she has to start early because she requires many breaks. <u>She does the dishes and laundry and her husband helps her to change the sheets</u>. <u>She gets up at 5:00 am to get her son ready for school and she takes care of the baby</u>. While she <u>retires for the night around 10:00 pm</u>, she does not sleep throughout the night. She estimates that she can stand for about 5 minutes, sit about 10-15 minutes, and walk about 2-3 minutes. . . .
>
> Examination of the knees revealed no effusion and <u>full range of motion with some tenderness</u>. She has some tenderness of the lower lumbar paraspinous muscles and in the sacroiliac joints bilaterally, but <u>she has normal range of motion of the hips and negative straight leg rising</u>. She is noted to walk with short steps and her gait is somewhat awkward, <u>but she ambulates without assistive devices</u>. . . . <u>The claimant's activities of daily living consist of caring for her personal needs, cooking, cleaning, doing laundry, driving, . . . , watching television, talking on the phone, chatting on the computer, texting and attending church</u>. While the undersigned finds that, the claimant has some limitations relative to her arthritis and degenerative [disease] none is greater than described in the residual functional capacity as determined above. The undersigned notes that the record does not contain any opinions from treating or

examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.  However, <u>given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor.</u>  Yet a review of the record in this case reveals <u>no restrictions recommended by any treating doctor.</u>

(Tr. 18, 19 (emphasis added)).

Therefore,  Ms. King's position that the ALJ improperly evaluated her under the Eleventh Circuit pain standard is not well-taken.  Instead, the ALJ appropriately contrasted Ms. King's alleged daily pain level range of 7-8 with (i) her activities of daily living, including beginning her day at 5:00 a.m., ending it 17 hours later at 10:00 p.m., caring for a baby, texting, using the computer, and doing a variety of physically demanding household chores; and (ii) the absence of any doctor-ordered restrictions pertaining to the severity of pain associated with Ms. King's diabetic and degenerative conditions, such as prescribing the use of an ambulatory device to assist her with her walking, limiting her periods of standing, or requiring her to take daily breaks from physical activities.  *Cf. Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (affirming credibility finding adverse to claimant in light of "record [which] showe[d] that the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain.") (emphasis added); *Werner v. Astrue*, 421 Fed. App'x 935, 938 (11th Cir.

2011) ("Werner's descriptions of his pain were inconsistent with reports from his treating and examining physicians, which showed that he had a full range of motion in his arms and legs and was capable of doing light work.); *Werner*, 421 Fed. App'x at 938-39 ("His description of his pain was also inconsistent with his own testimony concerning his daily activities.").

Alternatively, to the extent that the ALJ did not effectively discredit Ms. King's subjective complaints, such error was harmless because substantial evidence otherwise exists in the record to support the ALJ's credibility assessment of her and his related determination that her subjective complaints about her pain do not render her disabled within the meaning of the Act. *Cf. Caldwell v. Barnhart*, 261 Fed. App'x 188, 190 (11th Cir. 2008) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983))).  For example, while the record substantiates that Ms. King saw R. Stacy Tapscott, M.D. ("Dr. Tapscott") at the Decatur Orthopaedic Clinic for knee and lower back pain in March and April of 2007 (Tr. 202), that she received a bilateral corticosteroid injection for her knee pain on April 26, 2007 (Tr. 201), and that she was to return "as needed" to Dr. Tapscott (Tr. 201), the record lacks any evidence that Dr. Tapscott ever saw her again, much less

14

that the physician provided her with any further pain treatments.

Additionally, a series of treatment records from the Community Free Clinic of Decatur-Morgan County spanning from April 17, 2008, to January 15, 2009, reflect that Ms. King had no complaints (Tr. 216, 214, 212), even though, as of April 28, 2009, and one week before she filed for SSI, Ms. King reported that "all extremities feel like muscles being pulled out[.]" (Tr. 208).  In sum, Ms. King's sporadic medical history of reported pain and related treatment sought for such purportedly disabling subjective symptoms fail to substantiate her longitudinal-based challenge of the ALJ's application of the Eleventh Circuit pain standard.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 11th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge